**Leonard PUDGE, Plaintiff,**

**v.**

**FRUEHAUF CORPORATION,
Defendant.**

**No. 84 C 6037.**

United States District Court,
N.D. Illinois, E.D.

July 13, 1988.

James A. Brandvik, Charles J. Corrigan, Jacobson, Brandvik & Anderson, Chicago, Ill., for plaintiff.

James P. DeNardo, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

At the conclusion of a four-day trial in this age discrimination case, the jury returned special verdicts finding (1) that plaintiff Leonard Pudge's age was one of the reasons for discharge by his former employer, defendant Fruehauf Corporation; (2) that the amount of damages Pudge sustained as a result of Fruehauf's decision to release him because of age was $80,000; and (3) that Fruehauf's decision to release Pudge because of his age was not willful. On April 21, 1988, the court entered judgment on these verdicts.

Fruehauf moves for judgment notwithstanding the verdict. Pudge moves pursuant to Fed.R.Civ.P. 59(e) to amend the judgment to include additional awards for prejudgment interest, front pay, pension benefits, attorneys' fees and costs. For the reasons stated below, Pudge's motion for prejudgment interest, front pay, and pension benefits, and Fruehauf's motion for judgment notwithstanding the verdict are denied. Pudge's motion for attorneys' fees and costs is granted, subject to the reduction discussed below.

## I. Fruehauf's Motion for Judgment Notwiwthstanding the Verdict

██ Fruehauf has exhaustively reviewed the testimony and evidence produced at trial in order to support its assertion that the evidence failed to establish age was a reason for Fruehauf's reassignment of Pudge from Chicago used trailer manager to a territorial salesman's position, and his discharge when he refused to take the sales job. Fruehauf claims that the record supports its contention that Pudge was discharged because of his poor performance as a manager. In particular, Fruehauf relies on virtually undisputed evidence that the profitability of the Chicago used trailer department decreased substantially under Pudge's management. Fruehauf contends that there was insufficient evidence to establish that its business reason (poor job

performance) for discharging Pudge was a pretext.

The fundamental flaw in Fruehauf's analysis is that it is predicated on a view of the evidence in a light most favorable to Fruehauf. Fruehauf's conclusions can only be reached by improperly resolving credibility issues and drawing inferences from the evidence in Fruehauf's favor. At this juncture the evidence, and all reasonable inferences that may be drawn from it, must be reviewed cumulatively in a light most favorable to Pudge. *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 15 (7th Cir.1987); *Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665 F.2d 149, 153 (7th Cir. 1981).

Pudge's job performance was sufficient to meet Fruehauf's reasonable expectations. This conclusion is reached by resolving all issues concerning Pudge's testimony about his performance in his favor, even though it was contradicted by his former supervisor, Tony Standish. Fruehauf's personnel records concerning Pudge's performance prior to the discharge decision also support the jury's verdict, even though testimony and exhibits presented by Fruehauf reflect a substantial decline in the profitability of the used trailer operation Pudge managed. The jury could reasonably refuse to infer from that evidence that a decline in profitability was related to Pudge's job performance, just as the jury apparently disbelieved Standish's testimony that his recommended discharge of Pudge was based on his poor job performance and insubordination. Standish's trial testimony was contradicted by his earlier deposition testimony in several respects. Therefore, the jury could reasonably reject Standish's testimony regarding the reason for Pudge's termination and infer that Fruehauf's stated business reason for its action was a pretext. The jury also could reasonably infer that Fruehauf's proffered reason

for firing Pudge was pretextual, based upon the testimony of Fruehauf witnesses concerning attempts to document and justify its discharge action, admittedly to avoid an age discrimination claim. *Graefenhain, supra*, 827 F.2d at 21.

The court therefore concludes that there was sufficient evidence to support the jury's verdict.

## II. Pudge's Motion for Prejudgment Interest, Front Pay and Pension Benefits

Pudge seeks $21,600 in interest on the $80,000 awarded him by the jury for lost earnings from the date of his discharge, April 1, 1983, to the date of verdict, April 21, 1988. He requests front pay, that is, the prospective income he would receive from Fruehauf if he held the position of used trailer manager for the next eight years, until he reached the mandatory retirement age of 70.[1] Pudge further asks for pension benefits predicated on retirement at age 70. He requests an evidentiary hearing to establish the amounts of his front pay and pension claims.[2]

A prevailing plaintiff in an age discrimination case is not entitled to prejudgment interest, front pay and pension benefits as a matter of right under the Age Discrimination in Employment Act. 29 U.S.C. § 626(b). Rather, these considerations are addressed to the sound discretion of the court in order to provide legal or equitable relief, where needed to effectuate the purpose of the Act. *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1334–35 (7th Cir.1987); *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir. 1986); *Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1201 (7th Cir.1984); *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 162 (7th Cir.1981). The court should consider all the circumstances of the case to determine whether equitable relief, in addition to back pay, is appropriate. *Co-*

---

1. Pudge is presently 62 years old. Pudge no longer seeks reinstatement because of Fruehauf's "hostility" to him.

2. Fruehauf contends that Pudge is precluded from presenting post-trial evidence on his front pay and pension claims because he did not do

so at trial. Fruehauf's position can only be described as disingenuous, given the fact that Fruehauf stated in its trial brief that "... the issue of front pay must be tried before this Court and not a jury." Pretrial Order, Exhibit B, p. 8.

*ston, supra,* 831 F.2d at 1332–33; *McNeil, supra,* 800 F.2d at 111.

■ Considering all the circumstances of this case, the court does not find any compelling reason to provide the equitable relief sought. The evidence on the issue of liability was conflicting. While sufficient evidence supports the jury's verdict, a reasonable jury could just as well have found in favor of Fruehauf. Fruehauf presented evidence that Pudge was less than an effective manager, although his ability as a salesman was recognized. Fruehauf also presented evidence that on several occasions Pudge was insubordinate. In sum, this was a close case where the employer's age discrimination was found not to be willful by the jury.[3]

■ It is clear from Pudge's post-trial motions that he does not think the jury awarded him sufficient back pay. However, the jury was presented with evidence of Pudge's lost income and his less than aggressive attempts to mitigate his damages.[4] It was within the jury's province to assess back pay damages. The court will not undermine that assessment, as Pudge suggests, by awarding additional damages under a prejudgment interest or front pay theory. Pudge also contends he is entitled to additional damages because of the long delay before the case reached trial. That delay cannot fairly be attributed to Fruehauf or provide a basis for an additional award of damages, however labelled.

Equitable considerations do not compel an award in this case for prejudgment interest, front pay or pension benefits.

## III. Pudge's Motion for Attorneys' Fees and Costs

■ Pudge moves for $60,228.75 in attorneys' fees and $1,880.95 in costs, pursu-

ant to 29 U.S.C. § 626(b).[5] Fruehauf objects to attorneys' fees in excess of Pudge's contingency fee agreement with his attorneys' firm. Fruehauf also challenges specific billings as excessive or unnecessary. Pudge's motion for attorneys' fees and costs is granted, subject to the adjustment discussed below.

### A. *The Method Used to Calculate Attorneys' Fees*

The contingency fee contract provided that Pudge's attorneys would receive 33⅓% of his recovery in this case. The jury awarded Pudge $80,000 in back pay. Fruehauf contends that Pudge's attorneys' fees therefore should not exceed $26,666. Fruehauf suggests that the market price for similar legal services is generally based upon contingency fee contracts, unless Pudge demonstrates that the case involves substantial injunctive or precedent-creating components or vindicates important nonpecuniary public policy. Fruehauf relies principally on *Kirchoff v. Flynn,* 786 F.2d 320, 328 (7th Cir.1986); *Gekas v. Attorney Registration & Disciplinary Com'n,* 793 F.2d 846, 851 n. 2 (7th Cir.1986); *Zabkowicz v. West Bend Co., Div. Dart Industries,* 789 F.2d 540, 553 (7th Cir.1986). However, all defendant's cases recognize that the method used to determine fair and reasonable attorneys' fees in a given case rests within the sound discretion of the district court. *Kirchoff, supra,* 786 F.2d at 329, n. 1 (Eschbach, J., dissenting) (citations omitted); *Gekas, supra,* 793 F.2d at 851; *Zabkowicz,* 789 F.2d at 554. Of particular significance, the *Gekas* court noted that

....[T]he "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably

---

**3.** The court does not concur with Pudge's view that there was substantial evidence that Fruehauf's conduct was willful. A reasonable jury could have inferred that Fruehauf's conduct in attempting to document Pudge's poor job performance was a good faith effort to show compliance with the law and to provide a defense in the event Pudge later made groundless age discrimination charges.

**4.** While Pudge made some effort to secure similar employment immediately after his discharge, he has not sought such employment during the past five years.

**5.** The Age Discrimination in Employment Act, 29 U.S.C. § 626(b), explicitly incorporates the right to recovery of reasonable attorneys' fees and costs under the Fair Labor Standards Act [29 U.S.C. § 216(b) ] by prevailing plaintiffs.

expended on the litigation multiplied by a reasonable hourly rate."

793 F.2d at 851, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

This is a four-year old case that has been vigorously defended. Pudge prevailed after a four-day jury trial. This was a close case where the evidence was in conflict. Throughout this litigation, Pudge has been represented by a distinguished attorney whose firm is no stranger to the successful prosecution of age discrimination cases. *See, e.g., Shorter v. Valley Bank & Trust Company*, 678 F.Supp. 714 (N.D.Ill.1988). In *Shorter*, another judge of this court awarded the same law firm $62,342.50 (335.30 hours at a $150 hourly rate). The *Shorter* age discrimination case was not as protracted as this litigation, nor did *Shorter* involve a jury trial.

Pudge supports his lead counsel's $150 hourly non-trial rate (and $200 hourly trial rate) by citing other comparable, judicially approved rates. *Chesny v. Marek*, 547 F.Supp. 542, 548 n. 5 (N.D.Ill.1982) ($150 hourly fee found "very reasonable indeed" in a civil rights action); *Monroe v. United Airlines, Inc.*, 565 F.Supp. 274, 275 n. 1 (N.D.Ill.1983) ($125 hourly fee for lead counsel and $85 hourly fee for other lawyers in an age discrimination case found "certainly reasonable in relation to current market rates for legal services"); *Mills v. Eltra Corp.*, 663 F.2d 760, 763 (7th Cir. 1981) ($150 hourly rate found "appropriate" as a contingent fee for appellate work in a stockholders' disclosure suit).

■ Pudge establishes by affidavit that the hourly rates at issue are those regularly billed by his attorneys. *See* Plaintiff's Motion, Exhibit B, Affidavit of James A. Brandvik ($150 hourly fee for non-trial work; $200 hourly for trial); Exhibit C, Affidavit of Charles J. Corrigan ($85 hourly fee). The hourly rate ordinarily charged by an attorney is an important factor for the court to consider in determining a fair and reasonable market rate for that attorney's work on a case. *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir.1986) (citations omitted). The court therefore finds

the normal rates charged by Pudge's attorneys of far more probative value than the rate normally charged by Fruehauf's attorney. *See* Fruehauf's Memorandum in Response, Exhibit B, Affidavit of Samuel A. Purves ($100 hourly fee for both non-trial and trial work). This is particularly true here because Pudge's lead attorney has been a trial attorney in more than 100 civil and criminal cases over the past 36 years.

Fruehauf also questions Pudge's use of a second attorney for trial preparation. The second attorney's services are clearly described in the billing statement attached to Pudge's motion. Moreover, the court personally observed the associate attorney's professional contribution at trial, particularly in the preparation of jury instructions and in assisting lead counsel with exhibits and motions. This case was not overstaffed.

■ For the foregoing reasons, the court concludes that the appropriate method for determining attorneys' fees is to use the normal hourly rate billed by Pudge's attorneys multiplied by the hours they reasonably spent on this litigation.

### B. The Sufficiency of Pudge's Billing Records

■ Fruehauf complains that the time records attached to Pudge's fee petition are insufficient because they are not adequately detailed, do not break down time periods into enough fractions of an hour, and reflect excessive time spent on certain activities.

For the most part, the court finds the time records sufficiently clear and detailed. Time spent on specific activities appears to be recorded in hours and one-tenth hours (by use of a decimal point). While most entries are made only in hours, the records enable the court to determine whether the times indicated are reasonable.

Fruehauf challenges 12 hours listed from October 5, 1984 to December 17, 1984, relating to Fruehauf's motion to dismiss Count II of the complaint. That count was in fact dismissed with prejudice. Count II raised a purported breach of contract claim

under state law. Pudge acknowledged that Illinois courts did not recognize the claim. Minute Order dated January 11, 1985 (Leighton, J.). Fruehauf asserts that Pudge cannot recover attorneys' fees because the unsuccessful claim was unrelated legally and factually to his successful age discrimination claim. *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Fruehauf also asserts that Pudge is not entitled to attorneys' fees for this activity because he apparently did not contest the dismissal of Count II. *Zabkowicz v. West Bend, supra*, 789 F.2d at 551. Pudge has failed to respond to this challenge. The court therefore shall reduce the award for lead counsel's non-trial time by 12 hours, or $1800.

### Costs

Pudge claims costs totaling $1,880.95. He has fully documented these expenditures with attachments to his motion. Plaintiff's Motion, Exhibit D. Fruehauf does not dispute this claim. It shall therefore be allowed.

### Conclusion

Fruehauf's motion for judgment notwithstanding the verdict is denied.

Pudge's motion for prejudgment interest, front pay and pension benefits is denied.

Pudge's motion for attorneys' fees and costs is granted in part and denied in part. Pudge is awarded $58,428.75 in attorneys' fees (44 hours at $200 an hour; 285.95 hours at $150 an hour; 79.25 hours at $85 an hour) and $1,880.95 in costs.

Judgment shall enter in favor of plaintiff Leonard Pudge and against Fruehauf Corporation in the amount of $60,309.70 for attorneys' fees and costs, the judgment to be paid to Pudge's counsel, Jacobson, Brandvik and Anderson.